Please rise. Hear you, hear you. This Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Robert E. Flanagan. Please be seated. We are on the 2nd case of the docket this morning. We are on the 2nd case of the docket this morning. May it please the Court, Counsel, Andrew Gable for the Appellate, Nathan Rigg. Nathan Rigg was improperly convicted of predatory criminal sexual assault due to numerous errors. First, the trial court gave the wrong clause of the jury instruction for penetration under the predatory criminal sexual assault statute. The State alleged that the defendant penetrated his 4-year-old daughter, A.S., her vagina and anus with his finger. The jury should have been instructed that penetration required intrusion of the defendant's finger into A.S.'s vagina or anus. The court, however, instructed the jury that penetration merely required that an object make contact rather than intrusion with A.S.'s vagina or anus. So, Counsel, if we assume that's the wrong instruction, how is it not invited error where there was no objection? And the statement on the record that that is the definition? It was the State that tendered that instruction. The defense did say that is the definition, I have no objection. However, the defense never tendered that instruction. The defense didn't ask to proceed in one manner at trial and then try to argue something different on appeal. The State here also displayed that improper instruction to the jury on the board, and it was also the State that provided the definition to the jury that a finger can be an object. That was never explained to the jury, and that was, again, never offered by the defense. But don't you have to preserve your objection? Ideally, he would preserve the objection.  Required. However, here is why it's under plain error. Because, number one, Counsel was ineffective for not objecting to that clear error. And now he is in this situation where our only recourse is under the plain error. So then the next step in the analysis would be whether the evidence is overwhelming otherwise and whether the outcome would have been different. So what's your position on that? Our position is that the evidence was closely balanced. Here the complaining witness, who is six years old at trial, did not testify about intrusion at the trial. She was specifically asked by the State whether the evidence was overwhelming. She said that touching occurred inside or outside of her vagina, and she said it was the outside. She was asked specifically when the defendant touched her butt, was it on the outside or the inside? And she responded, I think it was on the inside, but I don't really know it was on the inside. Because of the instruction, it was irrelevant whether or not she said there was intrusion or touching on the inside or the outside. The only evidence of actual intrusion here came from the grandmother's testimony about what A.S. allegedly said to her. And that statement occurred after A.S. had already had one Children Advocacy Center interview where she did not disclose abuse. A second Child Advocacy Center video that the court excluded because it was not reliable. And on the same day that A.S. had a counseling session. The record shows that there were some issues between Laura, that's the grandmother, and the defendant. That A.S. lived with the grandmother. A.S. wanted to continue living with the grandmother. That there were custody issues about this. And that the grandmother had said something to defense counsel during the trial calling him sick while she was holding A.S.'s hand. And the grandmother clearly had a bias against the defendant. And the issue here is whether or not any of that could have impacted A.S.'s testimony. And the court had already found that the second Child Advocacy Center video was to be excluded because there had been some kind of adult intervention or influence on A.S. by someone. And in that second video, A.S. specifically said somebody told her that she had not told the truth at the first interview. We don't know who that was. We do know that the grandmother took A.S. to that first interview. And that is the only evidence of actual intrusion here. There were some other statements about touching of the privates, but nothing about actual intrusion. The other issue, there was some testimony by the grandmother that A.S.'s vagina was red or swollen. And this was right before or right after the weekend staying at her father's house. However, A.S. was seen by a doctor that day who testified at the trial who examined her and did not see any redness or swelling. Further, that statement about the redness and swelling, Laura did not repeat that to the emergency room doctor or the nurse that treated A.S. on that day. The next issue, then, would be the statements that came in under 115.10 or hearsay. Again, all of these statements occur after A.S. had already been interviewed at the child advocacy center and she did not disclose abuse. Two of these statements occur after A.S. had already been interviewed at the child advocacy center and she did not disclose abuse. One occurred after the second interview at the child advocacy center, which the trial court kept out because they were unreliable. And noting that someone had told A.S. that she had not been truthful when she first did not disclose any abuse. Our position is that all of these statements are still tainted. That if the trial court, it's clear that there was some kind of adult intervention here. But yet the trial court allowed all of these different statements to come in, knowing that there had been some sort of adult intervention. And it's not clear who told A.S. that she was not truthful at that first interview, and we don't know when that occurred. So there was no showing that any of these statements were not influenced by that someone telling A.S. that she was not truthful at that first interview. The court did find one of the statements was an excited utterance by A.S. That's when she came home from the weekend at her father and his parents' house. However, the state never showed that A.S. did vomit and then allegedly made the statement. But the state never showed when any alleged abuse actually occurred. So they cannot show that this alleged touching or abuse affected her statement or she was still under the influence of that activity. The next issue is the court's blanket ban on recross examination. Here the court specifically told the parties in front of the jury that it was not the court's practice to allow recross examination. But it won't relax it one time. Later, when the state put on its expert witness, Shannon Kruger, who did the merit exam and testified, the defense was prevented from engaging in any recross examination. And the court told defense counsel that he made it clear on the first occasion that the court does not engage in recross examination and denied the objection. And the reason why this is important is because that expert witness testified on redirect that she did not believe that there was any coaching. She had no concerns about A.S. being coached by anyone. So the defense was unable to recross her on any of that. And again, the record shows that there was at least some type of influence. And the state was allowed to have an expert get up there and testify, to testify that she had testified 200 different times and had no concerns about A.S. being coached. That was one of the defense's main arguments, that there was some sort of influence or coaching, and they weren't able to get into that on recross examination. The state was unable to argue on closing that A.S. couldn't have been trained so well to stay on script and to essentially fool a merit examiner, which would be the expert witness. So, counsel, the counterargument made by your opponent is that it wasn't a blanket ban because in the one instance he did allow it. Arguably, the other instances might have been beyond the scope or repetitive. What's your response to that? I presume it was not beyond the scope. I know in the arguments for the motion for the new trial, the trial court says that it made a conscientious decision, but that is not what the court said during the trial. The court essentially said this is the policy, I'll relax at one time, and Bindman did not relax at the one time. And the questions about whether or not the coaching and recross was not beyond the scope. Because in the redirect, the state specifically was asking the expert about concerns about coaching and referrals to counseling, and the recross examination was directly on point to that. The next point is about Detective Sharp, the investigator here, testifying about the second forensic interview and listing the names and titles of all the people there. He told the jury that he arranged a forensic interview, but there was no explanation of what a forensic interview is. The jury didn't know. It sounds impressive. And that there was a state's attorney there, a forensic interviewer, somebody from DCFS, and a detective. And based on that interview, the detective began his investigation. Now, the detective did not say what A.S. said at that interview, but the only conclusion is that she said something happened, and that is why this investigation began. And the other only conclusion is that these people believed her. Otherwise, nothing would have gone on from this. And this is particularly troubling because this was, in fact, the second forensic interview by A.S. The jury didn't know about that first interview, but this gives the impression there was only one interview, and all these people believed A.S. It also was an enderun around the fact that the trial court had excluded this interview from being played to the jury because it was unreliable. And briefly, I will next touch on the Crankle issues. After trial, the defendant raised numerous issues pro se. And the main thrust here is that the defense counsel had already admitted he was deficient or ineffective. The trial court knew he was deficient or ineffective. The state even acknowledged that the jury instructions were deficient or ineffective. And our position is that required new conflict-free counsel. The trial counsel did not object to the improper jury instructions. It's clear that the jury instructions were wrong, and then this puts the trial counsel in a position where he has to defend his conduct during trial when he's already admitted that he was deficient or ineffective. If we reverse and remand based upon the defective instruction, what arguments or issues are mooted? From the Crankle inquiry, Your Honor? In general. I think there's still an issue with the sufficiency of the evidence, but if it is remanded, I think many of the issues would be mooted. I mean, there would be obviously some issues before trial about what people can get into, and there may be some arguments about what's going to come in under the 11510. And then just briefly, as noted in the opening brief, these issues are cumulative. There are a lot of errors here, and they all kind of relate to each other. This isn't where there's a distinct hearsay and a distinct closing argument. These are all kind of related to each other. All right. And if there are no further questions? Any other questions? No, sir. No. I have an opportunity to make a roll call. All right. Thank you. Ms. Joseph, you may proceed. Good morning, Your Honors. May it please the court, counsel, Victoria Joseph for the people of the State of Illinois. Both the prosecution below, the trial court below, were all in agreement that the jury was instructed improperly on the contact clause instead of the intrusion clause, where the charging instrument charged an intrusion because it was a finger in the vagina. So it needed to be, the instruction needed to be given on the intrusion clause. Everybody below, once that issue was raised, seemed to be in agreement that that was error. However, the court found it was invited error by the defense because when the instruction was tendered by the state, the defense said, that is the definition, no objection. It's very similar to the situation in Parker. There were actually two instructional issues in Parker. One was a... Did the trial court determine who specifically invited the error? I believe it did find that defense invited the error by agreeing to the instruction. Was it the defendant who was talking or was defense counsel who was talking or not talking? Defense counsel invited the error, Your Honor. Obviously, defendant is bound by defense counsel's actions. Is it considered effective counsel when you invite error? It is considered deficient performance, Your Honor, because we do have to realize that there are two prongs of ineffective assistance of counsel, and they should not be collapsed here. The court did find deficient performance. If the court did so, then why didn't the court grant the crankle? Because at the point it was first raised, Your Honor, it was in a counseled post-trial motion. There was not at that point a pro se claim of ineffective assistance of counsel. That was raised. It was then addressed. It was thoroughly addressed. Counsel was questioned. There was a record made of the court's findings as to that claim at the post-trial motion. It was raised again in the crankle motion. The court addressed it again at the crankle motion. Defendant then came back with new counsel after being denied the crankle motion in the first post-trial motion. It was re-argued again by new counsel who essentially raised all or if not all, substantially most of the defendant's same pro se claims of ineffective assistance of counsel at that point. So it was addressed three times by the trial court, both with the counsel who made the error and independent counsel. So, go ahead. Was the trial court wrong once, twice, or thrice? Wrong insofar as the court gave an improper instruction. The court was not wrong in finding it was invited. The court, I, the state is unaware of any case that specifically says once you find deficient performance at a counseled post-trial motion where no pro se ineffective assistance of counsel claim is raised has to immediately stop the proceeding and appoint counsel to continue on. Once it was brought out on a pro se claim, it was addressed again. So I want to move on to the prejudice problem. It's an essential element, right, to have the instructions being the intrusion versus contact, right? That's an essential element of the crime. And the jury was misinformed, misinstructed on that. How does that not go to the fundamental fairness of their verdict? Well, we do know that the Supreme Court in Hopp has held that it's not an automatic reversal just because they've been in Hopp. There's Hobbs, which is the Fourth District unpublished case, and there's Hopp, H-O-P-P, that was the Supreme Court case. What is not automatic, per se, reversible error, that you have to look at the context of everything that happened. Here is different than Hobbs, the Fourth District unpublished case. I know defense counsel states that they're not intertwined, but the decisions are intertwined. In Hobbs, there was insufficient evidence as a matter of law of intrusion. So had the jury in Hobbs been instructed correctly, they should not have been found defendant guilty of the offense. Here, it's closer to McNeil, where there was sufficient evidence, the people maintain there was sufficient evidence of the intrusion. So had the instruction on intrusion been given, as the trial court noted, the outcome would not have been different. So that is why there's not the fundamental error of second prong. Obviously, the people maintain that we are not addressing this as plain error. Should this court find invited error, that door is foreclosed to the defendant at that point, and then we're addressing it under ineffective assistance of counsel, which is the prejudice prong, which the trial court did address and found that had the correct instruction been given, the result would have been the same. So what about James? Do you distinguish that? James, I believe, was also a situation that was decided under closely balanced, under the first prong of plain error, where the court found the specifics of the offense were very kind of wishy-washy. It could have been contact, it could have been intrusion, it could have been something else. So because of that wishy-washiness of the evidence, it was closely balanced, such that the instructional error was enough to tip the balance. I mean, here, I know in your brief at various points you emphasize that the victim testified to inside, but that's not really what she said. She said she thought it was inside. She said she wasn't sure. And that is why we have the importance of having 11510 statements, Your Honor, is because we know with young children who are testifying in a formal setting in front of the defendant, they may not be articulating the sex offense as clearly as they have in their statements where they are safe and secure with people that they trust. Are you claiming that the evidence wasn't close, that the evidence was overwhelming? There is a distinction between closely balanced and overwhelming. For it to not be closely balanced, the evidence does not have to be overwhelming. We are claiming that it was not closely balanced because we did have the 11510 statements. We did have Laura's observation of her physical condition of her vagina, saying that it was swollen and red. The jury could use common sense that by the time the doctor saw her five, six hours later, it may not have been in the same condition after a physical manipulation. Right. There is evidence from which the ultimate conclusion can be inferred. But the question is, is it so overwhelming that it overcomes the jury instruction? I believe under the prejudice prong, it does, Your Honor, because, again, you are looking at the result. If you are looking at it under closely balanced, it has to just not be closely balanced, which is usually coming down to a credibility contest, versus here we do have additional evidence that supports, including the child's own demonstration to her grandmother of the offense, which, while it may have come after the second CAC interview, is still quite a bit inexplicable why a child would suddenly stick her finger into her anus. So those are all pieces of evidence that can be considered in determining this is not closely balanced. It's your contention that if a single witness says unequivocal things, and then says equivocal things, that the evidence is not closely balanced, even though the measurement or the assessment of weight and credibility relates to an individual whose testimony the entire case depends on? Isn't the testimony of this child the only real evidence? Was there any medical corroboration whatsoever? There was no medical corroboration, Your Honor. Well, if she says three different things, you seem to be saying that it's not close, because one of the three things was pretty strong. But aren't we supposed to look at the totality of the evidence and determine, you know, on this day she said one thing, on the second day she said another thing, and on the third day she said another thing? And doesn't that then relate to credibility of witnesses, and doesn't that make it a closed case to the extent that this is the only evidence that the jury relied upon? Of course credibility is coming to this decision, Your Honor. Credibility, both the evidence supporting the elements of the offense and the evidence supporting credibility findings are both part of a common sense assessment of closely balanced evidence. Here you're also looking at what you have, the observations made by her grandmother, which is collaborating her actual statements and her demonstration of the offense, and that's why even equivocal statements, at least as to her anus on the stand, while the people maintain that she did say that it went into her anus, into her butt, that all of her statements were consistent with it being inside her butt, both her demonstration of the statement showing what her father made her do and her statements to her grandmother, two of them specifically said in, and the fact that the grandmother observed a condition of her vaginal area that corroborated that the defendant was making an intrusion. So it's your contention that there's insufficient evidence or proof of prejudice, which means the converse, that this defendant received a fair trial. Yes, Your Honor. Thank you. Counsel, as to the miscibility of the other statements, the trial court found the second interview was subject to influence and barred it. Do you want to address that? Yes, the court expressed concern that there may have been adult intervention before the second statement. It found the child's statement when she first arrived inexplicable that she didn't tell the truth the first time. It also, her changes in terminology and language had not been explained well enough for the court to find that it was reliable. However, the court assessed each individual statement and that one is found unreliable or inadmissible under 11510 does not vitiate the reliability of every other statement where the court is making a particular independent finding as to each one. So I understand that argument as to the prior statement, but if the court found undue influence on the second interview, wouldn't subsequent statements also be subject to the same logic? No, Your Honor, because you're still looking at the time, content, and circumstances of each individual statement. And you have two other statements. It was also these statements were made out of, even though the court found open-ended questions, it wasn't suggestive in any way, it was still an adult prompting the child to make statements. Her later subsequent statements in, I believe, February and or March were both unprompted by the adults. The court found them spontaneously made insofar as they came out of no prompting. So you are looking at all of the circumstances and that was what added to the reliability of those statements. The court also was aware that the child was in therapy at that point and it could take, those are all the circumstances it did consider. It did consider that there may have been some adult influence in this child's life, but still independently assessed each statement. And so following on that, some of that is subject to cross-examination of witnesses. And the child was available to be cross-examined as well, who was the proponent of the statements. Now that leads into the final issue about the recross. The court did not allow recross as a blanket ban, although on one witness it was allowed. The defense has asserted that it was not allowed in circumstances where it should have been. So how do you address the constitutional issue on that? Insofar, the people maintain that there wasn't a blanket ban. The court may have made a statement that it wasn't its practice, but it was still using its discretion as to each time it was presented. Because it did use, obviously. But the court said, I'll make one exception, I'm not going to do it again. Words to that effect. And then it clarified its finding later that I was still paying attention to what was coming out and I did not find any new matter on which to allow a recross. So it would be disingenuous to say there was a blanket ban if the court was exercising its discretion to allow it in cases where it believed there was a new matter raised. The defendant did not put on an offer of proof at the time. The court denied the recross. It actually didn't come out until, I believe, the post-trial motion. So even when they came back the next day and complained a second time, there was still no offer of proof as to what they believed was the new matter that was raised and the redirect and what they wanted to address. It sounds like you're making the argument that it was error. But because there wasn't an offer of proof, there's forfeiture or there's lack of prejudice. And so I'm asking you to clarify whether you believe that if there is redirect or re-redirect, that there should or should not be in the abstract perfect case, the court has the discretion to deny recross both as to the defendant and as to the state. The court has discretion to deny further questioning if it finds that no new matters have been raised in the previous questioning. So it's the privilege that… You're imputing a condition that I don't know is in the record. Well, the cases have held that if new information is elicited during questioning, that the opposing party must be given the right to cross-examine on a new matter. We are maintaining… That's not the issue. The issue here is this judge indicated he's not going to allow recross examination. You've made a qualified statement, which is accurate most likely, but it has nothing to do with addressing the abuse of discretion or the exercise of discretion, which I find somewhat intriguing when somebody says it's a policy of mine that… Is the exercise of a policy an exercise of discretion, especially when cases are sui generis? In this case, I think the court's comment was a misnomer, that its practice was not to allow it because, number one, it did allow it, and, number two, when it was discussed in the post-trial motion, the court recognized that it had discretion and was actively paying attention to the questioning and did not find a new matter was raised to allow the recross examination. Your syllogism has failed to mention that he did allow it, and then he explained that he did allow one exception. If he hadn't said that, I might accept your argument, but since he explained that he will make that one exception, then it seems to me that the policy was still intact. If he had said, I'll make a second exception, then I'd say that the policy may or may not be intact, unless he also explained later on. But the logic of your argument isn't sustainable on the basis that when he indicates that he's making an exception, that he supposedly has exercised his discretion, such that the policy or the exercise of his discretion as to a matter of policy is ambiguously allowable or a proper exercise of discretion. Again, what the court was doing in the passing of that point, but it did recognize that it was to use its discretion when new matters arose unredirected. So it was not a situation where the court misapprehended its duty to be paying attention and exercising discretion in those situations. And we do maintain that by not raising an offer of proof that it was also forfeited. Any other questions? No. No. Thank you. Your time is up. Thank you. Thank you, Your Honors. Counsel, you may proceed. I will be brief, Your Honors. Just the State mentioned the McNeil case and the other cases that they cite to. All of those cases will have just overwhelming evidence. In particular, you know, McNeil, there was a confession detaching. There's, you know, the victim testified unequivocally. It's completely different than here. Here there's no confession. There's no physical evidence. And the complaining witness had different versions of what happened and did not testify specifically about intrusion. The second issue is just the State talks about how the statements to the grandmother in February where A.S. was allegedly on the ground and placing her fingers in herself, that that was spontaneous. However, again, that was on the same day that A.S. had a therapy session and was after there had been two CAC videos. And in one of those videos, the grandmother had taken A.S. to that. There was clear adult intervention along the way here, and that can't be considered a spontaneous statement. Why didn't the attorney make an offer of proof when he was told that no recross would be allowed? I don't know. I think that would be, in my opinion, that would be ineffective. He should have. Now, the court was very clear and did the first time he talked about policy was in front of the jury. But I believe the counsel should have made an offer of proof. Counsel, as to the various statements and their admissibility, 115.10 includes safeguards of reliability and there were relevant factors. You're talking about the spontaneity of the statement to the grandmother or the demonstration with the statement? I would say to both. All right. So, I mean, spontaneity is one of four factors. So what about the others, the consistent repetition being part of the spontaneity factor, but mental state of the child, use of terminology, lack of motives to fabricate? As to the consistency of the statement, she had sort of different statements. Some were about her dad hurting her. This was the only one that was specific about intrusion. As for the terminology, her terminology also changed from using privates to vagina in these multiple statements. And as for any, I believe the other one was a potential bias, I mean, that's, I think it was shown here that the grandmother had some issues with the defendant. It doesn't specifically mean the grandmother made the child lie, but it could also be that the child picks up on some of that and is influenced by everything that's going on with the grandmother. You heard that they're exchanging the child at a police station, that there's custody issues, that there's issues about where the child is going to live. This is a four-year-old child, and the reason that they have these forensic interviews is to try to keep some of that out. And here it's clear that that all came in, and it's our position that the child could have been influenced by any bias from the grandmother. So are you asking us to apply the logic applied by the trial court in barring the second interview, the second videotaped interview, for influence based on the language and terminology used? Are you asking us to apply that to every subsequent statement? Yes. Is there any reason why, well, let me ask you the other way. What indicia of reliability are there from the other statements that didn't exist with the second videotaped interview? Our position would be that all of the statements should be out, because we know that somebody told A.S. that she was not truthful in that first interview, but we don't know when she was told that. Was that right after that first interview, which would then impact and influence all the other statements or taint all the other statements? Now, if we were to find a reversible error on the jury instruction and send it back, are you asking that we make determinations on the admissibility of all the statements? And if so, what authority do we have to reverse the court's decision on the admissibility of the second video interview? Within the court's discretion, what authority to, I'm not sure I understand, I'm sorry. So are you asking us to make a determination as to each of the statements? And if so, why wouldn't we also second guess the decision of the trial court as to the admissibility of that second video statement? We would be asking for you to look at each statement, and that would be within the court's authority if they want to take a look at that second statement. Our position is that that was decided correctly. That was clear. There was a change in terminology, and she went into that video and said, somebody told me I didn't tell the truth in that first interview. All right. I don't have anything further. Any other questions? Thank you. Case under advisement. We have another case on the call. It will be a short recess. All rise.